Jones, C. J.
This was an action of assumpsit, to recover the amount claimed to be due for a cerooti of indigo, sold to the defendants, at 15s.Id. per pound, subject to deduction from the gross weight for tare. The leading question on the merits, turned upon the amount of tare which was to be allowed and deducted. The plaintiff’s claim, after the deduction -admitted by him, amounted to about §194.20, which the principles of the defence would reduce to §182.94. The defendants pleaded a tender of §182, but offered no proof of the tender at the trial. They, however, paid into court, under the usual rule for that purpose, the sum of §183.50, which was probably intended for the amount due on the purchase, after the deduction claimed by the parties. The Judge told the jury, that the plaintiff was, at all events, entitled to the sum which the defendants had admitted by the plea of tender to be due, with interest from the sale. The jury gave a verdict for §183.50.
By this verdict the principle of the defence was fully sustained, and the jury obviously intended to confirm the allowance of tare claimed by the defendants. I should have been satisfied with the verdict, had the jury, in settling the amount of it, conformed to the spirit of the direction they received from the Judge. But they have allowed the plaintiff the exact sum paid into court by the defendants, without adverting to the circumstance, that it does not include the full interest upon the sum admitted by their pte'a *610 of tender, to be due from the time of the sale and delivery of the which they were instructed to allow. The direction of dge, on this point, was correct, and ought to have been observed.
The sale of the indigo was by auction, and not being shown to be on credit, is to be intended to have been for cash. The purof the sale and delivery of the article, which ought, of course, to have been allowed against him. The jury were probably led into the error by the miscalculation of the defendants, and acted upon the supposition and belief, that the full amount of interest was included in the sum paid in by them. But it is nevertheless, an error, which, unless cured by the consent, of the parties to rectify it, will compel us to set the verdict aside. A new trial, however, with our impressions against the plaintiff on the other questions in the cause, would not probably avail him. chaser was, consequently, chargeable with interest from the time
And first, the usage to which the plaintiff objects, was, we think, clearly admissible. The sole object of it was, to enable the defend-an ts to ascertain and show the quan t if y of indigofor which they were to pay the plaintiff The article of indigo in ceroous, is necessarily subject, on purchases and sales by the pound, to deductionfrom the gross weight of (he wrapper or ceroon for tare: the purchaser is, however, to pay the price of the indigo for the cerotm or wrapper in which it is packed. Now the average tare for the ceroon or wrapper in ordinary cases, when honestlyand fairly packed, has been found to be ten per cent.; hence, casual and unpremeditated variances being disregarded, that average rate has, for the mutual couvenince of dealing, been established by custom, as the rate of tare, to be allowed in all ordinary cases on sales, in the common course of business. Experience was the teacher whose counsels introduced the rule,'and when it was seen that fraud would sometimes derange its accustomed operation, and cause it to work injustice, the same unerring guide led to the modification of the general usage, by a particular custom adapted to this, emergency ; and it became by common consent, as part of the custom of the trade, that in cases of excess of tare by the fraudulent packing of the ceroon, the whole actual tare should be deducted from the gross *611 weight, and allowed to the purchaser. The whole entire custom of the trade, then, is to allow the average tare of fen per cent, on .. . all purchases, as a matter of course, but in the special case of an undue excess by fraud in packing, to allow the whole actual tare to the purchaser. Cases of dishonesty in packing, by which the quantity of indigo is intentionally diminished by the fraudulent excess of tare, are out of the reason of the general custom, and come properly xvithin the principle of the particular custom, thus incorporated into the general usage of the trade.
The case now before us was proved by the testimony on the trial, and found by the jury, tobe one of that class ofinfectedcases, and the special usage, xvhich we hold to govern it, xvas also established by' proof and found by the verdict. On turning to the case, we find, that the tare of this*ceroon was proved to be about 17 per cent., being an excess of 7 per cent, above the average rate ; and that the jury, upon the question being specially put (o them, declared that, fraud had been practised in packing the indigo at Caraccas. It cannot, I think, be denied, that this excess of tare, and the presence of the extra pieces of useless hide proved to have been found in the ceroon, were sufficient presumptive evidence of fraud; and if so, it was a case of fraudulent packing, in which the custom is, to allow the whole actual tare to the purchaser. The question of the sufficiency of the proof of this custom, was also specially put to the jury, and they have, by their answer, distinctly affirmed its existence. On both these questions, thus specially propounded to the jury, their finding is supported by the testimony, and ought not to be disturbed.
The fraud in the packing of the indigo, and the usage consequent upon it, must, therefore, be taken as established facts in the case. But the point of the objection is, that the custom, admitting it to subsist, xvas not admissible in evidence on this issue, and the plaintiff contends in support of the objection, that by the express terms of sale, the rate of tare was to be ten per cent., and no further deduction to be allowed. But is that the contract between the parlies 1 The witness who proved the sale, testified, ’hat it was expressly declared at the time, that the indigo would be sold subject to the usual deduction of ten per *612 cent, for tare ; andón his crossrexamination, lie says that ten per cent, is the usual tare allowed on indigo, and that this ceroon was sold expressly at the usual tare. What is there in 'the terms of sale, as proved by this witness, to affect the right of these defendants to the benefit of the usage in question 1 It xvas a sale in the usual and ordinary course of business, and the declaration that the indigo would be sold subject to the usual deduction of ten per cent, for tare, xvhich is the strongest, expression used by the witness, was no more than the formal announcement to the bidders, of the uniform rate of tare, xvhich was by the general custom established for ordinary cases, and would be applicable, in the first instance, to all sales of indigo in ceroons, by xveight. It left untouched the special usage, applicable to cases of excess of tare by fraud in packing the indigo. No immediate or prospective provision xvas made to regulate the application of the usage, in the event of the case occurring, or to modify or impair the purchasers’ claim to its full benefit.
It was not known or supposed, at the time of sale, that anj fraud or deception had been practised in packing the indigo at Caraccas, or that the tare xvould be found so excessive as to induce the presumption of fraud ; and the developement could not take place, nor the true character of the transaction be ascertained, until the ceroon xvas opened, when the fraud must necessarily be exposed. At the sale, therefore, this ceroon xvould be sold on the same terms as the rest, and the purchaser would conform to the general rule for the alloxvance of tare, until the secret fraud which distinguished it from ordinary cases, and brought it within the special usage, was discovered : but upon that discovery showing an excess of tare by dishonesty in packing the indigo, the special usage took effect and applied ; entitling the defendants, as the purchasers, to the alloxxance and deduction of the full actual tare, iñsfead of the average rate of ten per cent. JEvery such purchase and sale, in the usual course of business must be held to be made in refei ence to this usage, and if the facts and circumstances when disclosed, call for its application, it is to govern the case.
The vendor, if not himself a party to the fraud, may by contract, guard himself against the consequences of the usage ; but *613 the agreement which protects him, must, I apprehend, in substance, provide that the risk of excess of tare by fraud, shall devolve upon the purchaser, and lie borne by him, and tire whole gross weight after the customary deduction of 10 per cent, be paid for, notwithstanding any such secret, and fraudulent excess of tare. There is certainly no such provision in this contract, nor can the terms of this sale, bv any construction, be made to indicate any such condition or agreement. It was the sale of the indigo by weight, at a given price per pound, and not by the oeroon for a gross sum. And its language refers to the state of things as then supposed to exist. No express provision was made for the case of a fraudulent excess of tare, and, as respected that contingency, the parties necessarily contracted in reference to the usage, which was to regulate their rights, in case of its occurrence.
The effect of the contract of sale, as I understand it, was, that the ordinary deduction of 10 per cent., which applied to all sales of indigo in .ceroons by weight, should, as a matter oí course, and at all events, be made, and that the excess beyond that rate, if any excess should be discovered, and should be found the clear result of fraud in packing the indigo, should also be deducted from the gross weight, so as to allow the purchasers the whole actual tare, according to the usage applicable to the case. The custom then, was not in conflict with the contract or the terms of sale, and could not be excluded on that ground. Was it liable to any other exception ?• It. is too just in its principles, and too fair and reasonable in its application, to be exposed to the charge of being at variance with any rule of law or morality. And the circumstance that the dealers in indigo, have by common consent, established it for their government in special cases of fraudulent excess of tare, bespeaks it a beneficial, just and salutary qualification of the general custom. If, therefore, the defendants were advised that it was material to their defence, they had a right to introduce it in evidence at the trial. A glance at the pretensions of the parties will satisfy us of the importance of its bearings on the merits.
The indigo being purchased by weight, and subject to tare, a just allowance was to be made for the tare before the quantity to *614 be paid for could be ascertained: and the question chiefly in controversy, was the allowance to which the defendants were entitled on that account. The tare, in this, as in other cases, if no customary rate ha- been established, must have been ascertained by the process of weighing, and the actual tare thus asceitained, would, in such case, be the deduction to be made for tiie gross weight. But that process was too inconvenient for practice, and ten per cent, being found, by experience, to be the average tare in ordinary cases, was established by common consent, as the rate to be allowed on purchases and sales.
The plaintiff claimed the application of this customary rate to the sale in question. But the claim was repelled by the defendants, on the ground that the case was not within the priticiple of the usage which applied to ordinary purchases and sales, but that the dishonesty in packing the indigo in this ceroon, had produced a fraudulent excess of tare, and that in such cases the custom was to allow the purchasers the whole actual tare, instead of the average rate of ten per cent.; and the offer to which the plaintiff objected, was to prove that special customgin support of the defence. Now the point in dispute, was the tare to be allowed the purchaser. ■ And considering that question as controlled or materially influenced by the established usages of the trade, it becomes important to show what those usages were.
The plaintiff having, at the sale, referred to the customary rate of ten per cent., and, on the trial, shown that to be the usual allow;nee for tare on indigo, the defendants were driven to the proof of the whole custom, in explanation of the plaintiff’s evidence, and to show, that the usage admitted and referred to by him, applied to ordinary cases only where the indigo was honestly packed; but that in cases of fraud and deception, producing an unfair excess of tare, and a corresponding deduction of the quantity of indigo, the custom was to allow the whole of the actual tare to the purchasers, as a deduction from the gross weight. The usage on which the defendants relied in their defence, composed a branch or part of the custom, which the plaintiff had himself shown. It was the practice of the general custom, which applied to the purchase and sale in question. And to have held the defendants bound by the general *615 rule, and yet to have denied them the benefit of the exception en-grafted upon it, would have been manifestly unjust. They were surely entitled to prove t hat their case did not. come within the principle of the average rate applicable to ordinary sales, but was governed by the particular usage which applied to special cases of fraudulent excess of tare, by deception and dishonesty in packing. And what testimony could be more appropriate and material to that defence than the usage they ofiered 1 It went directly and conclusively to establish the right they claim, and it let in the accessary proof to ascertain and show to the jury the true quantity of indigo actually delivered to them, and for which they were justly chargeable, and ought to pay.
The defence taken on this point by the defendants, was against the plaintiff’s claim to apply the genei’al average rate of tare to their purchase. They resisted the claim, because it exacted from them full payment of the contract price for what was never delivered to them, and their purpose was, not to discharge themselves from the obligation to pay for the indigo they received, but to reduce the plaintiff’s demand to the standard of justice, by ascertaining and showing the true quantity of the article sold and delivered by the plaintiff, and received by them. To this point their proof was directed. It was full and complete, and upon the supposition, that the custom admitted and shown „on the part of the plaintiff would, if unexplained and without qualification, stand in the way of the defendants’ proof of the fact of excess of tare, or render that proof unavailing to them, must it not be competent to them to show that the average rate of tare did not apply to them, but that in such cases of fraudulent excess as they show this to be, the custom is to allow the purchaser the deduction of the whole actual tare, instead of the ten per cent. 1 The usage and custom of the trade, both in their application to ordinary cases, and to the special case of fraudulent excess of tare, by the dishonest packing of the indigo, as explained by the testimony, appear to me to be perfectly competent,.reasonable and just, and they interposed no obstacle to the defendants’ defence. And, viewing the proof of the particular usage in all its aspects and bearings, I am satisfied that it was admissible and proper evidence.
*616 II It was not necessary for the defendants to make any offer to return the indigo. There was no intention or desire on their part id rescind the contract;. and their defence did not turn upon any fail-lire or non-compliance of the plaintiff in respect of any warranty or covenant, express or implied, of the quality of the article. The merits of the defence rested upon grounds disclosed in the case, and which certainly did not require the return, or offer to return, the indigo. That objection, therefore, is wholly inapplicable.
III. But it is further objected, that seasonable notice was not given by the defendants of the claim for the excess of tare, on the ground of fraud in packing the indigo; and that the plaintiff, by reason of the neglect, lost the opportunity of an early application to his vendors for indemnity. Whatever consideration might, under other circumstances, be due to this complaint, it comes before us without any just pretensions to our favour. The sale was on the 19th of February, and on the 22d of May following, money was paid into court by the defendants, on the principle of their defence. It does not appear at what precise time the discovery of the fraud was made, or when notice of the defence was given, but no exception was taken at the trial to the want of sufficiency of notice. And it is too late now to raise the point. If the objection had been made at the trial, full and early notice, if held necessary, might have been shown.
The only valid objection, is the error of the jury in the amount of their verdict; but the extent of that error is ascertainable by mere calculation, and it may, by the consent of the/defendants, be amended. If they assent to the amendment, judgment is then o be entered upon it, as amended, for -the plaintiff with costs, otherwise a new trial will be granted, or the plaintiff may enter judgment on the verdict, as it stands, with costs, at his election.
Oakley, J.
(after stating the facts.) There is no ground for the objection, now made by the plaintiff that the verdict is against evidence, as the weight of the proof seems to me to be decidedly in favour of the defendants.
It is well settled, that a usage of trade cannot be set up, either to contravene an established rule of law, or to vary the terms *617 of an express contract. (Thompson v. Ashton, 14 J. R. 316. Teats v. Pirn, 1 Holt, 95. ) But it is equally well settled, that all contracts made in the ordinary course of business, without particular stipulations, expressed or implied, are presumed to be made in reference to any existing usage or custom, relating to such trade ; and that it is always competent for a party to resort to such usage, not to vary, but to ascertain and fix the terms of the contract. In the case now before us, the indigo was sold at the usual rate of tare ; and that rate, appears to be admitted, to be 10 per .cent. If the terms of the sale had been, that no more than 10 per cent for tare, should be deducted, the purchasers would be bound by the express stipulation of the contract, in the absence of fraud on the part of the seller. I do not understand the notice given by the auctioneer, at the time of the sale, as amounting to such an express stipulation. The purchasers at the sale must have understood, when the rate of tare was announced to be 10 per cent., that reference was had to the supposed fact, that the ceroons of indigo were honestly packed; for, in such cases only, is ten per cent, the usual tare. The usage to allow actual tare, in cases of fraudulent packing is to be taken to be well understood, and the parties are to be considered as contracting in reference to it.
In the absence of any usage on the subject, the actual tare would be allowed, as the purchaser would be obliged to pay only for the real quantity of the article received. If, then, a rule is introduced by custom,' to estimate the tare at 10 per cent., without regard to the actual tare, I see no reason why that rule may not be modified, by custom, so as to confine its application to cases in which there is no fraud. The one usage, or custom, rests on the same foundation with the other. I am of opinion, therefore, that the evidence objected to was properly admitted. It was resorted to simply to ascertain the real quantity of the article sold.
It is contended, however, that there should have been an offer to return, the indigo by the defendants. This can never be necessary, unless the contract is intended to be rescinded. The contract was a valid and fair one. It was a sale of a quantity of *618 indigo, the actual amount of which was unknown to the parties. To ascertain that amount, resort is had to the known usages of the trade, in estimating the tare to be deducted from the gross weight. The contract is admitted to be binding, and the only inquiry is, what are its terms 1 This view of the case is also an answer to the objection, that notice of the defence offered should have been given under the general issue. The plaintiff being hound to know the usage of deducting the actual tare, in cases of fraud, that usage was a part of the original contract of sale, and open to inquiry under the plea of non assumpsit. It was not matter arising subsequently to the contract, and set up to avoid it.
I think that the jury ought to have allowed interest upon the price of the indigo. It not appearing that any credit was given at the sale, it must be inferred that it was a cash sale and the defendants should have brought into court, in order to protect themselves from the costs of the suit, a sum sufficient to cover the price of the indigo, with interest from the time of the sale. They did not do this. ^Estimating the quantity of indigo at the least rate, 96 1-2 lbs., and charging the defendants with the interest, it will appear that the verdict of the jury was too small. It may be amended by the consent of the defendants. If not, a new trial will be granted, or the plaintiff may enter judgment on the present verdict, with costs, at his election.
[D. D. Field, Att'y for the plff. William Samuel Johnson, Att'y for the defts.]
Note.—Upon the subject of paying money into court, and the effect of such payment, there have been many decisions, sonie of which are not, perhaps, entirely consistent with "others. A complete digest of the English cases may be found in Starkie on Ev. [Vol. 3, part IV. p. 1094.] and in Harrison’s Index, tits. “ Costs” and “ Payment.” By paying money into court, the defendant, it seems, admits a cause of action to the amount paid in; and where the declaration is upon a special contract, he also admits the contract; but he does not thereby admit all the averments necessary to sustain the action. As for instance: in an action on a valued policy, where a total loss is averred in the declaration, the defendant, by paying money into court, admits the making of the policy, and perhaps the terms of it, but he does not admit thereby a total loss. This averment must be proved, or, in other words, the plaintiff must show damages beyond the amount paid in. [Rucker v. Palsgrave. 1 Taunt. 419, 1 Camp. 557.] If the plaintiff does not esta *619 blish a claim to a larger sum than that paid in, upon the production of the rule, he is liable to be non-suited. [3 T. R. 657. 2 Salk. 597. 4 T. R. 10. 7 T. R. 372. 2 H. B. 374.]
In the case of Stoveld v. Bruvin and another, [2 B. & A. 117.] the reporter’s note says, that “ payment of money into Court generally on the whole declaration, ad- “ mits the contract as stated in each count, and a breach of it, and that something “ is due on each count thereon; but it does not admit tha amount of the breach “ there stated.”
In the case of the Bank of Columbia v. Southerland, [3 Cowen’s R. 336.] the court held, that where money is properly paid into court under a suitable rule, the sum paid in, is to be considered “ as stricken out of the declaration. It is a defence “ pro tanto, and unless the plaintiff proves a sum beyond what is paid, there should “ be a verdict for the defendant.”