## VAN RENSSELAER'S Executors *vs.* ROBERTS.

If one indebted individually, and also jointly with another, to the same creditor, make a general payment, the creditor may apply it to either account as he may choose.

He may apply it to the joint account, though he have given the party making the payment a receipt, as for money paid by him and in which the name of the other joint debtor is not mentioned.

The account books of the creditor, together with evidence that the entries were made at the time they bear date are competent evidence in his favor to show to which of two accounts he applied a general payment.

MOTION to set aside the report of a referee. The action was covenant for the non-payment of rent, brought by the executors of the lessor against the defendant Peter Roberts as assignee of the lessee, and was tried in June, 1844.

The plaintiffs proved a lease in fee from their testator Stephen Van Rensselaer to Jonathan Brown, dated April 16th, 1793, for a lot described as containing one hundred and thirty-nine acres of land; and gave evidence tending to show that in 1824 the defendant became the owner under the lease of fifty-five acres

of the lot. The clause reserving rent was substantially in the same form as in the lease mentioned in the case of *Van Rensselaer* v. *Jones*, (*ante p.* 449,) except that the rent was seven bushels of wheat, payable on the first day of January, in each year. The plaintiff proved the price of wheat on the day of payment in each year from 1825 to 1839, and the amount of rent payable on fifty-five acres, on an apportionment according to *quantity* for the same period; the interest was reckoned thereon from the time it ought to have been paid. The aggregate was $93.

The defendant made the same question as to a variance which was raised in *Van Rensselaer's Executors* v. *Gallup*, (*ante p.* 454,) and also objected to the allowance of interest; but the objections on both points were overruled.

The defendant then proved and gave in evidence four receipts, all signed by agents or clerks, *for the testator*, (except the last, which was *for his estate*,) admitting the receipt of different sums from the defendant " on account of rent," as follows: the first dated June 14th, 1830, for £14,5; the second, January 28th, 1832, for £2,2; the third, February 16th, 1832, for £2,4, and the last, March 4th, 1839, for $35. The first was signed by C. F. Pruyn, the second by R. Dunlap, jr. and the last two by A. D. Lansing.

C. F. Pruyn was examined on the part of the plaintiff, and testified that the payment mentioned in the first receipt was applied, at the time that receipt was given, on account of rent due on a farm leased to Peter Roberts deceased, and which on the books of the testator was charged to Paul Roberts and the defendant, and which they owned together. The other payments mentioned in the receipts, he said, were applied in the same way, all which appeared from the leger; but he added that he had no personal recollection of either of the payments. The defendant objected that the application could not be shown in that way. The objection was overruled. The witness produced a transcript from the leger, showing the application of the payments as he had stated. During the examination, the day-book was produced, proved and received in evidence against an objection by the defendant, and in it the payments mentioned in

the receipts were credited as received of the defendant "on ac't, fol 160 leger." The witness said he did not know when the receipts were given, that the defendant owned any land in the manor, except that he owned with Paul Roberts, and there was no account against him in the books for the rent on any other land.

A. D. Lansing was examined on behalf of the plaintiffs, and testified that the credit in the day-book of the money mentioned in the two first receipts, was made by Pruyn, and that mentioned in the other two by himself, and that each was made at the date of the receipt, and that the practice in the office was not to mention in the day-book or in the receipt given what farm the rent was paid on, but to note the page of the leger where the account of the rent on that farm was entered. It was proved that fol. 160 in the leger contained the account against Paul Roberts and the defendant, and that the transcript was accurately copied from that account. This evidence was given after an objection to proving the facts in that way which was overruled, but it was not distinctly objected that the page in the leger could not be shown by parol. The plaintiff proved the execution of the lease to Peter Roberts, and it was read in evidence.

The referee reported in favor of the plaintiff for $93.

*H. Z. Hayner*, for the defendant, moved to set aside the report.

*J. Pierson*, for the plaintiffs.

*By the Court*, BEARDSLEY, Ch. J. It seems hardly to have been denied on the hearing that the defendant was assignee of fifty-five acres, parcel of the farm demised to Jonathan Brown, and that the rent for said parcel was correctly estimated and apportioned, although the apportionment was made according to the relative quantity, not value, of the part of said demised premises of which the defendant was owner. If, therefore, he was responsible in this action, for the rent of the fifty-five acres, the report cannot be set aside on the ground that the amount found to be due was erroneous.

The point made that there was a material variance between the declaration and the evidence, as to the quantity of land of which the defendant was assignee, is disposed of by the case of *Van Rensselaer's Executors* v. *Gallup,* decided at the present term.(*a*)

Interest was allowable on the rent as was held in *Van Rensselaer* v. *Jewett,* decided at the last January term.(*b*)

There is not so much as a shadow of foundation for the objection that the covenants in the lease were illegal and void.

There is then only one general subject of inquiry in the case as presented, and that is whether the several payments made by the defendant, as was proved by the four receipts given in evidence by him, were properly applied towards the rent due from the defendant and Paul Roberts, jointly, on another piece of land. If that application was properly made, the defendant cannot, with propriety, complain of it, and the refusal of the referee to allow these payments in this case, was correct.

This inquiry presents two questions: *first,* whether the case was one in which the creditor had a right to make the application of these payments to the joint account, if he thought proper to do so: and *secondly,* whether legal evidence was given that such application had been made.

One of the four receipts referred to bears date in 1830, and was signed by Casparus F. Pruyn. Two are dated in 1832, one of them being signed by Robert Dunbar, jun. and the other by Andrew D. Lansing. The last of the four bears date in March, 1839, which was subsequent to the decease of Stephen Van Rensselaer, and was also signed by said Lansing.

No question was made that the several persons who signed these receipts, were not duly authorized to receive the payments, and give such evidence thereof as the receipts furnished. In legal effect they are precisely what they would have been if signed by the person for whose use and benefit the payments were received. So too, of the entries in the books of account;

---

(*a*) Ante, p. 452.     (*b*) Ante, p. 121.

although made by agents, they were as effective as if made by the principal himself.

According to the terms of these receipts, the payments therein acknowledged were received of Peter Roberts, the defendant in this suit, *on account of rent.* No reference, however, is made in either of the receipts, to the lease or the land, on which the rent was due; nor is it suggested in either receipt that the rent so paid was due from any other person than said Peter Roberts.

In the present action, the plaintiffs assert and claim that the defendant was indebted from January, 1825, to January, 1839, for rent on the fifty-five acres of the Jonathan Brown farm, and it appears by evidence in the case, that during the same period the defendant and Paul Roberts were jointly indebted for rent on another piece of land. When the payments mentioned in these receipts were made, there was a joint indebtedness of the defendant and Paul Roberts, as well as a separate indebtedness of the defendant alone, to which the payments might have been applied.

It is entirely settled that the defendant, who made the payments, might have directed the manner in which they should be applied, and the creditor, in that event, must have conformed to the direction given. But there is no evidence that any such direction was given, or of any agreement upon that point between the parties, unless what appears in the receipts is evidence to that effect. The receipts merely admit that the payments were made by the defendant on account of rent; but whether the rent was due from the defendant alone, or from him and Paul Roberts jointly, cannot be collected from any thing contained in the receipts. They certainly do not prove that the defendant gave any direction as to the application of the payments, nor can they be understood as containing evidence that any particular application of the payments was agreed upon by the parties.

The debtor not having directed how the payments should be applied, the creditor had a right to appropriate them to one or the other of these demands for rent, as he thought proper:

either would be receiving them on account for rent due from the defendant. Where an indefinite payment is thus made, I think the creditor may apply it, other things being equal, to a joint or several debt due from the party making the payment. If an authority for the point can be needed, I think that principle was adjudged in *Baker* v. *Stackpole,* in the court of errors, (9 *Cowen,* 420, 436.)

As the creditor in the present case was at liberty to apply the payments to the joint indebtedness of the defendant and Paul Roberts, it is necessary to see whether evidence of such application was given. If it was, it will be found in what was proved to be in the day-book and leger.

The payments mentioned in the first two of said four receipts, one of which was signed by Pruyn and the other by Dunbar, were proved to have been credited in the day-book by said Pruyn. He said he had no personal knowledge of the payment for which Dunbar gave the receipt, nor did he recollect any thing as to the payment made to himself. The other two payments were credited by Lansing, who signed the receipts for them. All the credits were given on the day-book at the times they respectively bear date, and which correspond with the dates of the several receipts. In form these payments were credited to the defendant alone in the day-book, " *on acct. fol.* 160, *leger."* There was nothing therefore in the day-book to show on what rent in particular the creditor intended the payments should apply; for that purpose it was necessary to know what appeared on the leger at folio 160, for otherwise the reference in the day-book would be unintelligible.

In an early stage of the hearing before the referee, parol evidence of what appeared in the day-book, was received. This was erroneous; but subsequently that book was produced and given in evidence, by which the previous error on that subject was cured. A copy of the joint account of the defendant and Paul Roberts, as it stood on the leger, was also produced and offered in evidence. It certainly ought not to have been received, if objected to, as the leger would have been higher and better evidence than a copy. But I do not find that the defen-

dant objected to the copy as such. He certainly objected that the books were incompetent evidence to establish certain things; but he did not object that this copy of an account in the leger should not be received, as the leger itself would be better evidence than the copy. The copy then was rightfully in evidence; and if that was a copy from folio 160, it is clear that the entries show that the payments were to be applied to the joint account of the defendant and Paul. Perhaps the defendant might have objected to parol evidence that the copy from the leger was from folio 160; but if he intended to make such a point he should have stated it in explicit terms. He could not then object, in general terms, to a mass of parol evidence already given by two witnesses, of which, a statement that the copy was taken from folio 160, was a small part, and now insist that his objection was to the parol evidence of the folio. The copy of account had been received without objecting that the original should be produced; and if the defendant desired to have the leger in court to determine what page the copy was taken from, he should have said so distinctly. This was not done; and the fact that the page from which the copy was taken was 160, was properly established by the parol evidence. Put the entries in the day-book and the leger together, and they furnish indisputable evidence that the creditor intended to apply these payments to the joint account. For that purpose the books and entries were competent evidence; and that fact being thus established, these payments were properly rejected by the referee. They had already been allowed as credits to the defendant; and of course he was not entitled to have them allowed a second time.

Motion denied.