It was proved that the architect who drew the original plans for the building in question, and under whose superintendence it was erected, made the plans received in evidence from some of such original plans, and copies of others, and his own recollections. Being examined as a witness, he was asked to look at each plan separately, and state if it correctly represented the compartments on each floor; to the admission of which questions a general objection and exception was taken. He was also asked, in reference to each floor separately, to state what the plumber’s work done on it by the plaintiff was; and objection was made to his answering as to three plans, Hos. 4, 7 and 8. In answering such last questions, he neither had anything to guide or assist his memory, nor did he appear to have looked at any plans while testifying to such work. In reference to plan Ho. 4, however, the only objection taken was, that the witness looked at it. There was also a general objection made and noted to his looking at any plans while testifying. The objection to his testifying as to the *440 work done on plans Eos. 7 and 8, was merely a general one. After that testimony, the same witness was again asked whether the plumbing work, delineated in colored lines and marks on the map, was correctly projected thereon ; a mere general objection was made to such question, and an exception to its admission taken.
The same question was put to another witness, (Wm. Stuart,) and the same general objection made to his answering it. That last witness, without apparently any aid from plan, memorandum or suggestion of any kind, detailed the whole of the plumbers’ work and apparatus done upon and put up in the building in question, and each part of it, with its character and all its dimensions, except as to the length of lead pipe and sheet lead. He then testified that he could not give the details of the results of such work without the aid of the plans on which he had originally laid down the lines of the pipes in pencil. An exception was taken on behalf of the defendants to a question answered by him, whether such lines correctly represented pipes put into the building by' the plaintiff. He also stated, in answers to questions similarly excepted to, that he could state size and kind of pipes, but not length; that his memory was not good enough to give distance without the plans. After that, he detailed the work as before stated. I find no evidence in the case that the statement of the details of work done by the plaintiff, in all parts of the building in question, given by this last witness, was the result of anything but unaided recollection, or that those details were at all read from any plans or statements. He spoke, throughout, as one testifying from memory. The details were given in answers to questions appealing solely to his recollection. In answer to general questions as to the general nature of the.work on each story, he stated each branch of it, as well as that in each compartment; then, in response to separate questions, as to the number of articles and extent of work in each branch, he enumerated such articles, and gave the size of lead pipe and sheet lead, without, however, stating the *441 length which was delineated on. such plans. Many of the details given by him did not appear on such plans, particularly as to perpendicular lead pipes, and yet they were given with equal clearness and certainty. No objection was made while he was answering such questions, that he was using the plans to assist him, and no exception was taken to any of such questions. The statement “that the “witness read from the various plans, and the Referee took “ down, in writing, minute details of plumbing work in different stories of the building,” contained in the abstract of evidence furnished by the counsel for the defendants must, therefore, be regarded as entirely unfounded.
The same witness made use of a statement, made up by him out of Oourt, of the length, weight and size of lead pipe and sheet lead used by the plaintiff, as well as its fastenings. It contained the items thereof, specifying length, and weight per foot. After stating the aggregate weight of lead pipe and sheet lead used in the building, he testified that he could not give the items which made it up, except by reference to such plans or the statement in question ; because he was unable to carry in his memory the exact number of feet from one point to another. He further testified that he could remember distinctly how the pipes were obliged to be run, and how they were actually run, and could locate them all on the plans of the house; and when so located, it became a matter of mere measurement. He stated that the details in his statement were taken from such plans, without measuring which, or referring to such statement, he could not give the length of lead pipe and quantity of sheet lead used. Finally, he gave the items from which he made up the aggregate of sheet lead and lead pipe used in the building, using such statements to refresh his memory. The question which elicited such statement of items was excepted to, although they were the same which had already been given by him from memory, being nearly two hundred in number. The weight was obtained by multiplying the weight per foot, according to the size previously stated, by the number of feet.
*442 The same witness also stated, from memory, apparently, there being nothing to the contrary in the case, the waste lead, solder, marble basins and other apparatus, and plumber’s fixtures used and put up in such building by the plaintiff, and the days’ work of plumbers and assistants employed by the plaintiff, done on the plumbers’ work and fixtures in such building or in preparing it elsewhere to be placed therein.
The same witness testified to the quantity of iron pipe put into the building by the plaintiff, from a memorandum of its measurement made by him upon measuring it after it was so put therein, stating that he could not give it from memory without such memorandum. The value and quantity of fastenings of such pipe he appears to have given from memory. Ho objection was taken to any of such evidence.
Evidence was given as to the existence of boqks in which materials taken from the plaintiff’s shop were entered from, time to time as they were taken. The prices of various articles were stated by the witness to be those charged by the trade; and that he got them from the record of the former trial. The witness Stuart stated it would take two or three months to make up, in Oourt, details of the statement made by him.
The first question that arises on all this testimony is whether the plans,.without reference to the plumbing work delineated on them, were properly in evidence. They were made partly from recollection and partly from former plans, but both witnesses testified they represented correctly the different horizontal divisions of the building into stories, and the perpendicular divisions or compartments of such stories. Thus far there was nothing in. them alone tending to make out the plaintiff’s case, as the plans might have been correct or incorrect, whether he ever did any work on the building or not. If asking the witness whether such representations were correct, was leading, it was still proper as mere inducement. I had occasion to state, on the former trial, that maps, plans, *443 models and drawings were proper, as more rapidly and clearly conveying an idea of the subject operated on than could be done by words, and, I may also add, as presenting greater facilities for applying any evidence afterwards given. (Rex v. Hadden, 2 Car. &. P., 184.)
The next question which arises, is, whether such plans, with the plumbing work delineated on them, were properly presented in evidence. The first witness stated generally, without objection, that the colored lines on each of them represented the plumbing work and its location. He then, in answer to a question as to the correctness of plan Ho. 3, in regard to compartments only, which was objected to, volunteered to state the plumbing on the ground floor, which was not objected to. He then, in answer to questions as to the work done on each floor by the plaintiff, which were objected to by the defendants’ counsel, stated it, but also volunteered to say that the work was correctly - delineated on such map by colored lines, which was not objected to. After testifying to his means of knowledge as to the accuracy of such plans, having already testified as to the correctness of the delineation of the plumbing work on them separately, without objection, he was asked generally as to such correctness. The testimony of another witness (Stuart) shows that the lines representing such work could have been resuj)plied by him in Court, had they been erased from such plans. There was, therefore, nothing to be gained by preventing either of such witnesses from testifying to the correctness of the delineation of the plumbers’ work on the plan. It is true, that by such delineation, the question whether it was correct became leading, because it referred directly to the subject matter of the suit, (Bearnon v. Ellice, 4 Car. & P., 585,) but the objection was not put upon that ground, if it had been, the plaintiff might have obviated it. (Sheeler v. Speer, 3 Binney., 130; Stickler v. Todd, 10 Serg. & Rawle, 63.) Indeed, the propriety of allowing leading questions, has been deemed almost arbitrarily discretionary in the Court before whom a cause is tried.- At all events, such *444 discretion ninsfc appear clearly to have been erroneously exercised to allow any interference with its application on appeal. (Cheeney v. Arnold, 18 Barb., 434; Budlong v.Van Nostrand, 24 Barb., 25; Moody v. Rowell, 17 Pick., 498; Steene v. Aylesworth, 18 Conn. R, 244.)
The correctness of the delineation of the plumbing work on the plans in question being thus legally established, the whole plans, with such delineation, were properly in evidence, and proper to be presented to any subsequent witness in testifying as to the work.
The testimony of the witness Stuart, as to the weight of the lead pipe and sheet lead, taking the length or dimensions as laid down on such map, was perfectly correct. The items contained in his written statement, consisting of those to which he had testified, without the aid of any document or plan, with the length of the pipe and sheet lead, were mere separate computations of weight, which could have been made by the Referee upon the data furnished by the witness and the plans, or in Court, and in regard to which the results could easily have been disproved, if incorrect, by the immutable laws of arithmetical calculation. But even as to this testimony there was no objection made, that the questions were leading. 3STo application was made to the court to prevent the witness from looking at the paper while testifying, and he was only asked to look at it, if necessary, to refresh his memory. He testified that he would be obliged to look at it for that purpose. There is nothing before us to show that he used it for any purpose, or that it was taken by the Referee as evidence without the testimony of the witness as to the facts stated by him. The subject as to which he was testifying was one in regard to which the use of leading questions and memoranda has been sanctioned. In Feeter v. Heath, (11 Wend., 485,) Chancellor Walworth says: “Such is the frailty of human memory, that very “few witnesses would be able to testify as to particular “dates, numbers, quantities and» sums, after the lapse of “a few years, if they were not permitted to refer to papers *445 “and writings, which they knew to be correct at the time “they were made.” Hence, he held parties might look at memoranda in Court to refresh their memory, provided they could afterwards speak from independent recollection. It does not appear affirmatively in this case that the witness could do so. But as he testifies directly to the facts, and was only asked to use the statement to refresh his memory, it is to be presumed that he confined the use of it to that.
The fact that there was better or more reliable evidence than that produced is immaterial. That which was used may have been inferior, but was not, technically, secondary. What weight was to be given to it was a matter for the Referee to- decide, in passing upon questions of fact. This applies to the existence of the original plans, and the scratch and order books.
For the main claim in this case, interest was allowed by the Referee only from the 15th of April, 1854, when for all work done under the contract he was entitled to interest from the 1st of January previous, as he was to be paid in cash, or notes equivalent' to cash, of course, which could only be by adding the interest, or making them payable with interest; cash and notes being merely two modes of payment, and not intended to indicate articles of different value; because in such case there could be no doubt as to the choice. But even if it were not so, and the notes were to be half in three and half in four months, the day when they were to become due was fixed, and interest must run from that time. (Williams v. Sherman, 7 Wend, 109; Still v. Hall, 20 Id., 51; Van Rensselaer v. Jewett, 2 Comst., 244; Livingston v. Miller, 1 Kern., 80; Van Rensselaer v. Jones, 2 Barb., 643; Lush v. Druse, 4 Wend., 313; Van Rensselaer v. Roberts, 5 Den., 470.)
In regard to the interest on the smaller sum of six hundred dollars, the only exception filed as to the interest, except that taken to its allowance on the larger sum, is the ninth, by which the defendants except to that part of the report where the Referee “ finds there is anything due *446 “to the plaintiff for interest.” This is too ambiguous to be capable of application; it may apply to either sum allowed for interest, and, not being good in toto, is untenable. Ho point was made as to such- interest on the argument, and I apprehend it is not intended to be .insisted on. Some of the items in such amount were for goods sold which bear interest from their delivery. (Sewall v. Gibbs, 1 Hall, 602; Pollock v. Ehle, 2 E. D. Smith, 541; Beers v. Reynolds, 1 Kern., 97.) The plaintiff could recover interest on the whole from the time of suit brought, (Feeter v. Heath, ubi sup.,) and perhaps the dealing between the parties entitled the plaintiff to interest prior to the time when it was allowed to commence. (Esterly v. Cole, 3 N. Y. R., 502.) The difference, if any, is so small as not to justify a reversal upon this ground alone.
In reference to the guarantee of the work, the answer only alleges that it was worth two thousand dollars to be released from it, but not what the probable injury to the plaintiff from keeping it would be. Ho evidence was offered upon either point. An allegation in a pleading, of an amount of unliquidated damages or a value, is not to be taken as true by an omission to deny it, except to sustain jurisdiction or show the performance of a contract requiring such value, or the like. Besides this, the answer alleges that the fire, which was an act of God, and not the defendant’s testator, released the plaintiff. He was either bound to replace all the work or was relieved from the guaranty. And most clearly such guaranty only applied to defects or accidents in use, and not destruction of the building and plumbers’ work by fire.
There being no errors in the admission or rejection of evidence, or the Beferee’s findings, the judgment should be affirmed with costs.